No. 8210.

## HARRIS JAFFA vs. M. O. MYERS AND HUSBAND.

A married woman may legally bind her paraphernal property for the purpose of liberating her husband from jail, and when she has done so in contracting with third persons in good faith, she is not allowed to deny her obligation on the ground of the marital influence and coercion.

Such a defense is a fraud for the perpetration of which the law will not lend her the aid and relief which it extends to married women against the abuse of the marital power.

A vendor, who has agreed with the vendee that the latter would assume the payment of certain obligations as part of the price of sale, is not allowed to plead the nullity of those obligations in a petitory action brought by said vendee, in which he claims title to the property sold.

APPEAL from the Eleventh Judicial District Court, parish of Natchitoches. *Pierson*, J.

Jaffa vs. Myers and Husband.

*Wm. H. Jack, D. C. Scarborough* and *J. F. Pierson* for Plaintiff and Appellee :

The wife has the right, with the authorization of her husband, then confined in jail under criminal charges, to alienate her paraphernal property to pay or discharge attorneys' fees, employed by her to defend him.

Where a married woman, in such a case, by her own voluntary representations, induces such attorneys to assume certain mortgages existing on the property, as good and valid obligations, and as a part of the price of the property accepted by them in discharge of their fees, she will be estopped thereafter in a controversy with their vendees from urging the invalidity of such mortgages.

Where a married woman employs fraudulent means to obtain a loan of money, she is afterward precluded from pleading against the mortgagee or subsequent holder the general incapacity resulting from coverture. By such act she forfeits the benefit of the legal presumption that her contract inured to the advantage of her husband.

*L. B. Watkins* for Defendants and Appellants :

First—This is an ordinary petitory action for the recovery of two improved lots in the city of Natchitoches, La., and to which defendants allege that Mrs. Myers has never given up the legal title. The suit was accompanied with a sequestration, and the property bonded into possession by plaintiffs.

Second—The consideration named in the authentic title from Mrs. Myers to Pierson and Scarborough, dated June 3d, 1878, was $800 for their services as attorneys at law, to be rendered in defending her husband, then in jail; and their assumption of the Raford Blunt and Jaffa mortgages, of $400 each, and the assumption of a claim of Jaffa for taxes alleged to have been paid by him on the property.

Third—On the same day, and before the same officer, Pierson and Scarborough executed a like title to the plaintiff, for the same consideration, except that the vendors simply released him, Jaffa, from liability as to his mortgage, and claim for taxes paid, that no actual value passed in either sale; that the mortgages were never discharged or cancelled, nor was the tax claim settled ; that a revocation of the title would reinstate these claims against the property in Mrs. Myers' hands.  John Chaffe & Bro. vs. Morgan, 30 An. 1307.

Fourth—The Jaffa mortgage was not authorized by the judge, under C. C. 127 *et seq.;* it was not for a consideration which inured to Mrs. Myers' benefit, or that of her separate property; that the burden of proof was on the plaintiff, and the valid consideration of the note secured was not supported by a preponderance of evidence.

Fifth—The Blunt mortgage is afflicted with a like infirmity, though the burden of proof was on Mrs. Myers. This she accepted and offered evidence under the allegations of her answer, that she had not given up the legal title, and that the sale was made under duress and mistaken advice as to the law and without one dollar of consideration, and which evidence was by the court improperly rejected because the judge's certificate was not assailed.   Barth vs. Kasa, 30 An. 940 *et seq.*

Sixth—That these two mortgages, if valid, formed no part of the cause or active consideration of the contract of sale of June 3d, 1878, as they existed antecedent to the sale, and remained in *statu quo* after the sale, without any payment being made.   Likewise of the claim of Jaffa for taxes paid.    That neither of the vendees parted with any money. Even the two attorneys rendered Mr. Myers future services only,

Seventh—The fee of the attorneys was a debt of the husband, and any promise of Mrs. Myers to pay it could not legally bind her, being in violation of a prohibitory law.   C. C. 12, 2398 ; 30 An. 291 ; 24 An. 142 ; 7 N. S. 64 ; 10 La. 146 ; 4 R. 508 ; 2 An. 579 ; 5 An. 595 ; 1 An. 428 ; 7 An. 293 ; 12 An. 725 ; 14 An. 700 ; 21 An. 525.

Eighth—Although it is the duty of the wife, all of whose property is paraphernal, to bear a portion of the marriage charges, yet this cannot exceed " one-half of her income."   C. C. 2389, 2395, 2345 ; 30 An. 552.   These charges must be taken out of her earnings.

Jaffa vs. Myers and Husband.

The wife cannot even be authorized by the judge to execute a mortgage upon her paraphernal property for such a consideration. C. C. 127 *et seq.*

Ninth—That the claim for $325 taxes paid antecedent to the sale was not supported by sufficient evidence as to the greater part, and that the valid part formed no part of the active consideration of the sale. That same was in no part paid by either vendee.

That the taxes and repairs since the date of sale form no part of its consideration.

Tenth—There is a wide distinction between the rules of law applicable to the alienation of dotal and paraphernal property of the wife.

The following are applicable to dotal property : C. C. 2337, 2347, 2349, 2354, 1357, 2361, 2363. Those applicable to the paraphernal property of the wife are the following : 2383, 2384, 2387, 2389, 2390, 2395, 2397, 2398; 30 An. 291 ; 16 An. 310.

Eleventh—That in case paraphernal property may be alienated to satisfy attorney's fees incurred in the husband's defense, under the authority of C. C. 2361, and 16 An. 166 ; that authority must be strictly pursued—the authorization of the judge and not that of the husband must be obtained—the sale must be made at public auction, after three published advertisements, and not by private contract, or conventional agreement—the decision of the judge as to the necessity for a sale must be obtained ; that of the husband will not suffice.

---

The opinion of the Court was delivered by

Poché, J. On the third of June, 1878, while H. C. Myers was incarcerated in the parish jail of Natchitoches, under several charges for felonious offenses, his wife, the defendant in this case, duly separated in property from him, retained the services of J. F. Pierson and D. C. Scarborough, attorneys at law, to attend to and manage the defense of her husband, and agreed to pay their fees at the stipulated sum of eight hundred dollars.

In payment of said sum, and on further consideration of their assuming two mortgage debts which she owed, she sold two lots of ground, her paraphernal property, situated in the city of Natchitoches, to the attorneys thus retained by her, and in the sale she reserved the right of redemption of the property sold until the 1st of March, 1879, on her reimbursing to her vendees the various sums of money stipulated as the purchase price.

On the same day her vendees sold the same property to Harris Jaffa, the plaintiff in this case, who institutes the petitory action for the recovery of the property, which he alleges to be in the unlawful possession of the defendant.

She urges in defense that she signed the sale under marital coercion and influence, and for no consideration to herself; and she prosecutes this appeal from an adverse judgment.

In their brief counsel limit the issue to the question of the validity of the wife's contract for the payment of counsel fees for the defense of her husband. Her counsel admit that the professional services were rendered and resulted in the discharge of the husband; that the sum stipulated as their fee was reasonable, and that no illegal or fraudulent means

were used or resorted to by the attorneys for the purpose of inducing the defendant to retain and compensate them as shown by the record.

But they take the ground that these services enured to the benefit of the husband, making him the real debtor of Scarborough and Pierson, and that the sale by the wife of her paraphernal property in payment, and for the consideration of the debt of her husband, which she thus assumed, was made in contravention of a prohibitory law, and is, therefore, null and void.

After a careful perusal of the evidence, although it is somewhat conflicting, we are satisfied that the services of Pierson and Scarborough were retained by the defendant for the purpose of liberating her husband from jail, and that the fees thus earned by these attorneys formed a personal debt of the wife, which she had full power under our laws to contract, in discharge of a duty imposed on her by the law which provides that "the husband and wife owe to each other mutually, fidelity, support and assistance." C. C. Art. 119.

Recognizing the duties thus imposed on the spouses as sacred and of paramount importance, our Code provides for the sale, by judicial authority and proceedings, of the wife's dotal immovables, for the purpose of liberating her husband from jail. C. C. Art. 2361.

And the wife is further empowered to alienate her immovable effects, of whatever nature they may be, in cases where the alienation of the dotal immovable is permitted. C. C. Art. 2397.

The defendant in this case, far from being prohibited from contracting as she did, was fully empowered by a solemn duty, and by the highest legal authority, to alienate her paraphernal property for the purpose of liberating her husband from jail, and of having him acquitted from charges of heinous offenses.

The power of a married woman to contract a debt under similar circumstances was interpreted, and fully recognized by this Court in the case of Nettles vs. Sheriff, 16 An. 339, where the wife was held bound for the payment of a note which she had executed in favor of attorneys at law for the purpose of defending her husband who was then confined in jail on a charge of manslaughter.

The sum of eight hundred dollars, which the defendant owed to Pierson and Scarborough, the attorneys who had defended and liberated her husband, was, therefore, a legal and valid consideration for her sale to them of her paraphernal property. The title which plaintiff acquired by his purchase from her vendees is, therefore, legal and binding on the defendant.

On trial, she attempted to show by parol testimony the nullity of the two mortgage debts which her vendees had assumed as part of the purchase price of the property which she transferred to them.

But this investigation was entirely foreign and irrelevant to the issue presented by the pleadings, which was one purely of title between herself and the plaintiff in his petitory action.

Having induced her vendees to assume, as part of the purchase price of her property, obligations of hers which she then recognized as legal and binding, she cannot be allowed to set up the nullity of such obligations, in order to defeat the titles of her vendees, which she is bound to warrant.

The legality or illegality of these contracts may be tested by her in some other proceeding, but not in this case, nor under the issues herein presented.

Having secured the services of these attorneys by means of the contract which she now seeks to annul, and having reaped the full benefit of their talent, their labors and their zeal, in the defense and vindication of her husband, for whom she professes in her testimony so much fondness, attachment and devotion, and in whose innocence she had such an abiding faith, she cannot now be tolerated in her ungrateful attempt to defraud them of their well-earned reward by claiming that she had ensnared them in the purchase of property to which, as she now contends, they have acquired no title by reason of her alleged misrepresentations. " The law protects the weakness of women, not their dishonesty." See case of Henry vs. Gauthreaux, 32 An. 1103, and authorities therein quoted.

The whole system of our civil law abounds with exceptional and wise provisions for the protection of married women, and is intended to shield them from abuse and oppression, and from the misconduct of their husbands; but it does not lend itself to any scheme under which married women may seek to defraud innocent parties and *bona fide* creditors.

The judgment of the lower court administered substantial justice between the parties, and is, therefore, affirmed with costs.